Julian McMillan, Esq. (SBN: 241937)
McMillan Law Group
2751 Roosevelt Rd., Suite 204
San Diego, CA 92106
P: 858-499-8951
F: 619-241-8291

[Proposed] Attorney for Debtor
Westwood SD, Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.: 12-05129-PB11 |
| | ) |
| Westwood SD, Inc | ) **DEBTOR'S EMERGENCY OMNIBUS FIRST** |
| | ) **DAY MOTION FOR ORDER: (A)** |
| Debtor, | ) **AUTHORIZING PAYMENT IN THE** |
| | ) **ORDINARY COURSE OF BUSINESS OF** |
| | ) **ACCRUED BUT UNPAID WAGES,** |
| | ) **SALARIES AND OTHER COMPENSATION,** |
| | ) **(B) AUTHORIZING THE PAYMENT OF** |
| | ) **PAYROLL AND OTHER TAXES** |
| | ) **RELATING THERETO, (C) MAKE USE OF** |
| | ) **CASH COLLATERAL, (D) RESTRAINING** |
| | ) **UTILITY PROVIDERS FROM ALTERING,** |
| | ) **REFUSING OR DISCONTINUING SERVICE** |
| | ) **OR, IN THE ALTERNATIVE, EXTENDING** |
| | ) **TIME TO PROVIDE ADEQUATE** |
| | ) **ASSURANCE OF PAYMENT TO UTILITY** |
| | ) **COMPANIES** |
| | ) |
| | ) |
| | ) [HEARING, IF NECESSARY, TO BE SET BY |
| | ) COURT] |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

///

DEBTOR'S EMERGENCY OMNIBUS FIRST DAY MOTION  –  1

**TO PETER W. BOWIE UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, TWENTY LARGEST UNSECURED CREDITORS, AND PARTIES IN INTEREST:**

WESTWOOD SD, INC., debtor and debtor-in possession herein ("Debtor"), moves this Court on an emergency basis pursuant to §§ 105(a), 363 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. P. 2002 and 9007, and LBR 9014-5 for an order:

1.  Authorizing Debtor to pay in the ordinary course of business the prepetition wages, salary, and other compensation accrued immediately prior to the filing of this chapter 11 case, pursuant to §§ 507(a)(3), 507(a)(4) and 507(a)(8) of the Bankruptcy Code;

2.  Authorizing Debtor to pay all payroll taxes and other tax liabilities related thereto that have accrued immediately prior to the filing of this chapter 11 case;

3.  Authorizing Debtor to use cash collateral to make required purchases of gas and goods, permits, testing, and maintenance pursuant to 11 U.S.C. §363(a) and FRBP 4001(b) and (d); and

4.  Restraining the Utility Providers from altering, refusing or discontinuing service or, in the alternative, extending time to provide adequate assurance of payment to utility companies pursuant to §§ 105(a) and 366 of the Bankruptcy Code.

The above-stated relief is necessary to preserve Debtor's workforce and assets and thus, Debtor's estate. It is in the best interests of Debtor's chapter 11 estate and its creditors, and is the best method to maximize the value of Debtor's assets and should be granted on an expedited basis.

If the relief requested herein requires a hearing, Debtor requests that this Court set the hearing at the earliest possible time on whatever notice the Court may direct.

DEBTOR'S EMERGENCY OMNIBUS FIRST DAY MOTION  -  2

This First Day Motion is based upon the attached Memorandum of Points and Authorities, all pleadings and papers on file herein, and the arguments and evidence that may be presented at or prior to the hearing on this First Day Motion.

Dated: May 3, 2012                                    MCMILLAN LAW GROUP


                                                     By: /s/ Julian McMillan_____
                                                     Julian McMillan, Esq.
                                                     Attorney for Debtor, Westwood SD, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Debtor commenced this chapter 11 case on April 10, 2012 (the "Petition Date"). Debtor hereby seeks, on an emergency basis, entry of an order permitting it to meet its pre-petition obligations in the ordinary course of its very limited business operations so it can maintain goodwill with its remaining employees and creditors and preserve and maintain the car wash and gasoline station. Debtor also seeks an order restraining utility providers from altering, refusing, or discontinuing service or, in the alternative, extending time to provide adequate assurance of payment.

### II. FACTS

Debtor was formed in March 1994 pursuant to Articles of Incorporation as a Nevada corporation, organized, among other things, to provide for the management, maintenance, preservation, and control of multiple real properties and businesses. The Debtor is registered as a foreign corporation operating in California. Paul Samagh purchased Debtor in 2006, and he has acted as the president since. The administration, operation, and maintenance of World Famous Hand Car Wash ("Car Wash") and 4S Gas Depot ("Depot") is the responsibility of Debtor, which acts through its officers.

**A. Car Wash**

Car Wash is a full service hand car wash located in the Kearny Mesa neighborhood of San Diego, California. It is located in the Prime Auto Plaza, a strip mall which accommodates a grocery store, a gas station, a Jiffy Lube, and a sandwich shop. Car Wash employs twelve people to operate a cash register, negotiate services, and wash the cars of its customers.

The Car Wash has had substantial financial difficulties, and is operating at a loss. The Car Wash is unable to attract enough customers sufficient to cover its increasing operating costs. Debtor has been unable to pay the lease on the property since July 2010. In 2011, Car Wash had a net loss of $28,507. As a result, Debtor is seeking to forfeit Car Wash and reject the lease in order to allow for Debtor to focus its attention on the profit making Depot.

**B. 4S Gas Depot**

Depot is a convenience store and gas station located in the Sorrento Valley community of San Diego, California. It has six gasoline pumps capable of serving twelve customers at one time, a convenience store, and a self-service car wash. Depot is situated in the Plaza Sorrento strip mall, which hosts a grocery store, a Starbucks, and many other businesses.

When operating at full capacity, Depot has between X and X employees. Depot's payroll includes benefits and taxes. In 2011, the payroll expenses of Depot were $49,480, or $951.54 per week. Payroll taxes were $4390 for 2011. Debtor's payroll obligation for period prior to filing the Petition is satisfied.

Debtor must retain all employees and managers to maintain the security and value of Debtor's assets. Debtor will be unable to retain its employees if unable to pay accrued payroll obligations, thereby deteriorating the value of Debtor's assets and reducing any opportunity for a return to creditors. Any disruption in the payments to Debtor's employees and managers would have an immediate and adverse impact upon the Depot, which is a significant asset of the estate. Staff defections would be likely, morale would decline, and the maintenance and security of the Depot would suffer.

The business makes purchases of gas and goods for the convenience store. In 2011, total gas purchases amounted to $2,891,334, and convenience store goods cost $148,049. These operating expenses are necessary to continue the operation of the Depot. Gas and goods are purchased on an as-needed basis. Debtor estimates these costs will be $300,000 monthly.

Debtor has to pay for testing, permits, maintenance, and repairs to the Depot. In 2011, Debtor paid $23451for gas nozzle repair, C&S solution, permits, and APCD testing. Debtor estimates monthly maintenance expenses of $2000.

Debtor has to pay for certain utilities, including gas and electricity, phone, and trash removal, in order to maintain the Depot. Costs for the year prior to filing the petition were $7164 for water, $27,129.36 for electricity and natural gas, and $850 for trash removal. The providers of utilities are San Diego Gas & Electric and San Diego Public Utilities ("Utility Providers").

DEBTOR'S EMERGENCY OMNIBUS FIRST DAY MOTION  -  5

Debtor estimates that the total monthly obligation to the Utility Providers will be approximately will be $3000.

### III. VENUE AND JURISDICTION

This Court has jurisdiction to consider this First-Day Motion pursuant to 28 U.S.C. §§157 and 1334. This matter presents a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Debtor continues to manage its financial affairs and operates its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The statutory bases for the relief requested herein are §§ 105, 363(b), and 507(a)(4), (5) and (8) of the Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6003, 6004(a) and (e) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and LBR 9014-5.

### IV. RELIEF REQUESTED

By way of this Emergency First Day Motion, Debtor requests that this Court enter and Order:

1.  Authorizing Debtor to pay in the ordinary course of business the prepetition  and post-petition wages, salary, and other compensation accrued immediately prior to the filing of this chapter 11 case, pursuant to §§ 507(a)(3), 507(a)(4) and 507(a)(8) of the Bankruptcy Code;

2.  Authorizing Debtor to use cash collateral to make required purchases of gas and goods, permits, testing, and maintenance pursuant to 11 U.S.C. §363(a) and FRBP 4001(b) and (d);

3.  Authorizing Debtor to pay all payroll taxes and other tax liabilities related thereto; and

4.  Restraining the Utility Providers from altering, refusing or discontinuing service or, in the alternative, extending time to provide adequate assurance of payment to utility companies pursuant to §§ 105(a) and 366 of the Bankruptcy Code.

DEBTOR'S EMERGENCY OMNIBUS FIRST DAY MOTION  –  6

This First Day Motion is brought on an emergency basis pursuant to LBR 9014-5. On May 2, 2012, Debtor served this First Day Motion, along with all concurrently filed pleadings and papers on its twenty largest creditors and the United States Trustee by US Mail, email, or fax. Debtor's proposed counsel also contacted all of Debtor's Utility Providers regarding certain portions of this motion.

## A. RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS

Debtor's employees are necessary to maintain the Depot and ensure that Debtor's bankruptcy demands are met. Unless Debtor obtains immediate authorization to pay its employees, the maintenance of the Depot could further decline, which would jeopardize Debtor's ability to maximize the value of the estate. Continued ability to purchase gasoline and goods for the convenience store is necessary to ensure that current contracts with vendors are not breached and the business can continue to provide its primary services. Continued and uninterrupted utility service and the granting of the other relief requested herein are necessary to ensure the efficient maintenance and security of the Depot during the pendency of this chapter 11 case. Any interruption to utility services would impair Debtor's ability to preserve and maintain the Depot and reorganize its financial affairs.

## B. THE COURT SHOULD AUTHORIZE THE PAYMENT OF PRIORITY PREPETITION AND WAGES AND RELATED TAXES

There are strong and justifiable reasons why the Court should grant the proposed relief. Specifically, pursuant to §§ 507(a)(4) and (5) of the Bankruptcy Code, claims by employees against Debtor for "wages, salaries, or commissions, including vacation, severance and sick leave pay," earned within 90 days before the Petition Date, and claims against Debtor for contributions to benefit programs arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status to the extent of $11,725 per employee.

Moreover, § 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a). All of Debtor's prepetition wage and salary compensation obligations constitute priority claims pursuant to the Bankruptcy Code, which Debtor anticipates will be paid in full.

The payment of Debtor's prepetition wage and salary compensation obligations is appropriate and authorized under § 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the Debtor." *In re Ionsphere Clubs, Inc*., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). This doctrine is consistent with the paramount goal of Chapter 11 of "facilitating the continued operation and rehabilitation of the Debtor." *Ionsphere Clubs,* 98 B.R. at 176. Given the facts and circumstances of this case, including Debtor's urgent need to Maintain its employees as it proceeds with this chapter 11 case, the necessity of payment doctrine applies here. Debtor's employees will also suffer extreme personal hardship and financial difficulty if Debtor is prevented from paying the limited amount of prepetition wage claims in the ordinary course of business.

Furthermore, it would be unfair to require Debtor's employees to personally bear the business expenses that were incurred on behalf of Debtor with the expectation that they would be reimbursed. Therefore, Debtor requests the ability to reimburse its employees for business expenses incurred prepetition that Debtor would otherwise have reimbursed in the ordinary course of business.

Any disruption in the payments to Debtor's employees and managers would have an immediate and adverse impact upon the maintenance and security of the Depot. Staff defections would be likely, morale would decline, and the maintenance and security of the Depot would suffer. Accordingly, obtaining court authorization to pay Debtor's prepetition wage obligations is critically important to Debtor and its creditors.

In order to maintain and preserve the Depot and meet Debtor's bankruptcy obligations, Debtor must retain its employees. Without timely payments of all prepetition payroll and wage related obligations, Debtor will not be able to meet this goal. None of Debtor's employees are

owed in excess of $11,725. Payment of Debtor's payroll taxes and other tax obligations relating to payment of its payroll and benefit amounts is necessary, appropriate, and authorized pursuant to § 105(a) of the Bankruptcy Code. These taxes are very likely "trust fund" taxes and are not property of Debtor's estate. *See Begier v. Internal Revenue Service*, 496 U.S. 53 (1990); *City of Farrel v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes). As such, this Court should authorize Debtor to pay all payroll obligations and corresponding taxes.

**C. THE COURT SHOULD AUTHORIZE DEBTOR TO USE CASH COLLATERAL TO PAY POST-PETITION PAYROLL, PAYROLL TAXES, AND BUSINESS COSTS ACCRUED IN THE ORDINARY COURSE OF BUSINESS**

Pursuant to 11 U.S.C. § 1107, a debtor in possession is seized of all rights, powers, duties and functions of a trustee appointed by the bankruptcy court. The debtor, the same as a trustee, is allowed to operate its business without orders from the court. 11 U.S.C. § 1108. Here, Debtor is authorized to operate its business in such a manner, prior to the appointment of the trustee. Section 363(c)(1) of Title 11 provides that if the business is being operated under § 1108 and unless the court orders otherwise, the debtor-in-possession or trustee may enter into transactions including the sale or lease of estate property, in the ordinary course of business, without notice or a hearing. The Bankruptcy Code makes a distinction between transactions in the ordinary course of business for which notice and a hearing are generally not required, and transactions which are other than in the ordinary course of business which are permitted only after notice and a hearing. 11 U.S.C. § 363(c). The legislative history of the Code provision provides no test or guideline concerning when a transaction is within or outside of the ordinary course of business. *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

One test used by courts is the "vertical dimension test," which inquires whether the transaction subjects the creditor to economic risks of a nature different from those which the creditor accepted in deciding to extend credit. *Id.* Applying this test, Debtor's creditors would have accepted the risk that Debtor would make payments to purchase gasoline and goods for its

convenience store, because the extended credit knowing that Debtor would need to purchase goods at wholesale in order to resell them at a profit. Another test is the "horizontal dimension test," which compares the debtor's business to other like business to determine whether a particular transaction is in the ordinary course of that debtor's business or some other business. *In re Waterfront Companies, Inc. v. Johnston*, 56 B.R. 31, 34 (Bankr. D. Minn. 1985). Here, a typical gas station would partake in the purchase of gasoline and goods. Further, all requested transactions are those conducted in the ordinary course of business of a gas station.

Debtor is asking for authorization to conduct transactions in the ordinary course of business. These transactions include paying its employees and payroll taxes and purchasing gasoline and goods. These transactions are typical of a gas station, and are necessary to protect the value of the Debtor's estate. As such, the Court should authorize Debtor to satisfy all payroll obligations, payroll taxes and to make purchases and transactions in the normal course of business.

**D. THE COURT SHOULD ENTER AN ORDER RESTRAINING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE OR, IN THE ALTERNATIVE, EXTENDING TIME TO PROVIDE ADEQUATE ASSURANCE**

Debtor seeks entry of an order: (a) prohibiting the Utility Providers from altering, refusing, or discontinuing service to Debtor; (b) deeming the Utility Providers assured of future performance; (c) establishing procedures for determining adequate assurance of future payment; (d) determining that Debtor is not required to provide any additional assurances, beyond what is proposed herein; and (e) if additional adequate assurance of future payment is required beyond what is proposed herein, extending by approximately 30 days the time for providing such additional adequate assurance of future payment until June 10, 2012.

Section 366(a) of the Bankruptcy Code recognizes the necessity of continuous utility services and prohibits Utility Providers from altering, refusing, or discontinuing utility services to, or discriminating against, a debtor due to either its bankruptcy filing or any outstanding prepetition obligations for a period of thirty (30) days after the filing. Section 366 therefore

creates an automatic injunction effective as of the commencement of the case. *See* 3 COLLIER ON BANKRUPTCY ¶ 366.02 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. Rev. 2010). At the conclusion of the thirty day period, however, a utility company may discontinue services if a debtor has not furnished satisfactory adequate assurance of payment. 11 U.S.C. § 366(c)(2). Thus on May 10, 2012, the Utility Providers may decide to discontinue service if they claim they have not received "satisfactory" adequate assurance of payment.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, courts, commentators, and legislative history all confirmed that section 366 does not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In Virginia Electric & Power Co. v. Caldor, Inc., 117 F.3d 646, 648-49 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit affirmed the bankruptcy court's ruling that the debtor's pre-petition payment history, its post-petition liquidity, and classifying as administrative expenses the post-petition invoices combined to provide adequate assurance of future performance. *See also S. Cal. Edison Co. v. Crystal Cathedral Ministries (In re Crystal Cathedral)*, 454 B.R. 124, 128 (C.D. Cal. 2011) [upholding bankruptcy court finding that the debtor's likelihood of performance and availability of resources provided adequate assurance]; *Shirley v. Philadelphia Elec. Co. (In re Shirley)*, 25 B.R. 247, 249 (E.D. Pa. 1982) ["section 366(b)… does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered."]

Under the recently enacted version of § 366(c) of the Bankruptcy Code, however, in a chapter 11 case, a utility company may alter, refuse, or discontinue utility service if within 30 days after the commencement of the chapter 11 case if the utility company does not receive adequate assurance in a form that is "satisfactory" to the utility company, subject to the bankruptcy court's ability to modify the amount of adequate assurance. Further, under § 366(c)(3)(B), in making a determination of whether an assurance of payment is adequate, the bankruptcy court may not consider: (i) the absence of security before the petition date; (ii) the

debtor's history of timely payment; or (iii) the availability of an administrative expense priority to the utility company.

While the form of adequate assurance of payment may be limited under the new § 366(c) to the types of security enumerated in § 366(c)(1)(A), the amount of the deposit, if any, of other form of security remains fully within the reasonable discretion of the bankruptcy court. The protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. *In re Adelphia Business Solutions, Inc*., 280 B.R. 63, 80 (Bankr. S.D. N.Y. 2002). A utility may not demand unreasonable adequate assurance from a debtor who is current in payments for utility services based solely upon a bankruptcy filing. *In re Heard*, 84 B.R. 454 (Bankr. W.D. Tex. 1987). Moreover, the clear language of § 366 and the brief legislative history in support thereof allows a bankruptcy court to enter orders continuing the utility termination injunction when the utility companies are given notice of a utilities continuation motion, and fail to reply to what a debtor-in-possession proposed as satisfactory assurance of payment. *In re Syroco Inc.*, 374 BR 60 (Bankr. D. P.R. 2007). A "cash deposit" (which is not defined) is one of the forms of assurance of payment, but the debtor is not required to deliver cash to the Utility Provider. 11U.S.C. § 366(c)(1)(A); *S. Cal. Edison Co.*, 454 B.R. at 130.

This Court has the authority to grant Debtor the relief requested herein pursuant to section 105(a) which provides that a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provision of this title." Because the procedures proposed herein protect both Debtor and the Utility Providers, Debtor requests this Court grant Debtor the relief requested herein under section 105(a), in addition to any other pertinent provision cited herein, as an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

Debtor holds sufficient cash to cover its obligations to the Utility Providers for the first few months of this chapter 11 case (the "Proposed Adequate Assurance", and defined in greater detail below). Debtor's cash position satisfactorily assures the Utility Providers of payment during the pendency of this chapter 11 case. Although Debtor has no deposits on file with any of

the Utility Providers, none is necessary under the Bankruptcy Code. *Puget Sound Energy, Inc. v. PG&E Co. (In re PG&E Co.)*, 271 B.R. 626, 644-45 (Bankr. N.D. Cal. 2002).

Bankruptcy courts have ample power pursuant to section 105 to stay termination of utility service under usual rules for issuance of injunction. *In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 n1 (Bankr. M.D. Fla. 1978). A bankruptcy court has equitable power under section 366, embellished by its power under section 105, to fashion, in exercise of its sound discretion, appropriate remedy, including injunctive relief. *In re Marion Steel Co.*, 35 BR 188, 195 (Bankr. N.D. Ohio 1983).

The Debtor's sufficient cash position, its history of timely payments, and its intent to continue making such payments support finding that the Proposed Adequate Assurance is satisfactory to the Utility Providers.

**1. The Utility Providers Have Adequate Assurance that Debtor will Continue Making Timely Payments**

The use of the word "may" in the second sentence of § 366 clearly contemplates that the decision whether to order security lies within the discretion of the Bankruptcy Court. *See In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D. N.Y. 1996) ("a Bankruptcy Court must be given reasonable discretion to determine what constitutes 'adequate assurance' of payment for continuing service"). Where the utility provider stands to benefit from the debtor's performance, and where there is no history of delinquent payments, no cash deposit or additional form of security is necessary. *Puget Sound Energy, Inc.*, *supra*, 271 B.R. at 644-45.

Here, the Proposed Adequate Assurance provides adequate assurance under § 366(c) to each of the Utility Providers. The adequate protection procedures described below are an additional form of assurance, whereby any Utility Provider can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing post-petition services to Debtor meriting greater protection. Debtor submits that such circumstances are not present here, as Debtor has timely made payments to the Utility Providers within the past year, and is only behind two months of payments. Debtor has sufficient cash to quickly cover the arrears.

As set forth above, in order to continue Debtor's very limited daily operations in the most cost-effective manner and preserve the Depot, Debtor must ensure that there is no interruption of utility services at the Depot. Because Debtor cannot preserve the Depot from substantial deterioration without utility services, it is critical that Debtor obtain authorization for the relief to pay the Utility Providers as their bills for utility services come due. The Utility Providers, in contrast to Debtor, will not be prejudiced by the continuation of utility services and will be paid all post-petition utility charges, and adequately assured of such payment by virtue of the facts and procedures set forth herein.

**2. In the Alternative, Debtor Requests an Extension of the 30-Day Period in 11 U.S.C. §366(c)(2)**

If this Court determines that the Proposed Adequate Assurance does not provide adequate assurance under § 366(c) to each of the Utility Providers, Debtor alternatively requests this Court enter an order extending the 30-day period under § 366(c)(2) for another 30 days, until approximately June 10, 2012, to allow Debtor to determine a new means of providing adequate assurance to its Utility Providers.

**3. Adequate Assurance Proposal**

Debtor is current on all of its payments to the Utility Providers and expects to continue to pay all post-petition obligations in a timely manner. Debtor is unaware of any reason why it will not be able to satisfy all obligations to its Utility Providers as a result of this chapter 11 case. Out of an abundance of caution to ensure that the Utility Providers do not disrupt and impair Debtor's ability to preserve and maintain the Depot, Debtor is requesting that this Court enter an order enjoining the Utility Providers from altering, refusing, or discontinuing service solely on the basis of the commencement of this chapter 11 case or that a pre-petition debt was not paid by Debtor. If this Court determines that Debtor is not entitled to such relief, Debtor alternatively requests this Court to extend the 30-day period for entry of such an order under § 366 of the Bankruptcy Code for another 30 days.

Nevertheless, Debtor submits, and hereby requests this Court enter an order confirming that the Utility Providers are adequately assured of compensation for the provision of utility

services to Debtor pursuant to: the sufficient amount of cash in Debtor's debtor-in-possession bank accounts; Debtor's history of timely payments to the Utility Providers; and/or the good will established by Debtor over the course of its relationship with the Utility Providers (collectively, the "Proposed Adequate Assurance"). Unless a Utility Provider objects to the Proposed adequate Assurance as providing insufficient adequate assurance, each Utility Provider shall be deemed to have stipulated that the Proposed Adequate Assurance constitutes adequate assurance of future payment to such Utility Provider within the meaning of § 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during this chapter 11 case, unless the Utility Provider makes an additional adequate assurance request no more than thirty (30) days after entry of an order by the Court granting the relief requested herein.

Debtor hereby submits that the Proposed Adequate Assurance, in conjunction with Debtor's ability to pay for future utility services in the ordinary course of business, constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, it may request such assurance pursuant to the procedures described below.

**4. Procedure**

To avoid the irreparable damage that Debtor would sustain in the event a Utility Provider were to alter, refuse, or discontinue utility services to Debtor, while simultaneously recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance, Debtor proposes the following procedures to establish a cooperative and effective manner, as follows:

a.      Debtor will fax, email, serve by overnight mail, or otherwise expeditiously send a copy of this First Day Motion, together with an Order granting the relief requested hereby to each of the Utility Providers;

b.      A Utility Provider desiring assurances in excess of the Proposed Adequate Assurance in the form of deposits, security, or otherwise must serve a request (an "Additional Assurance Request") upon Debtor (through Debtor's bankruptcy counsel) at the following address: 2751 Roosevelt Rd., Suite 204, San Diego, CA 92106; attn. Julian McMillan, fax: 619.696.7124, email: julian@mcmillanlawgroup.com (the "Service

Party"). The Additional Assurance Request must be sent to the Service Party to be deemed valid;

c.       An Additional Assurance Request must be made and actually received by the Service Party by no later than thirty (30) days after entry of an order granting this First Day Motion. If a Utility Provider fails to timely file and serve its Additional Assurance Request, it shall be: (i) forbidden to discontinue, alter, or refuse service to, or discriminate against, Debtor on account of any unpaid prepetition charges or the commencement of this chapter 11 case, or require additional adequate assurance of payment; and (ii) deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code;

d.       Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location for which the utility services are provided; (iii) identify the Utility Provider; (iv) briefly describe the type of utility service provided; (v) include a summary of Debtor's payment history relevant to the affected account(s), including any security deposits; and (vi) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment;

e.       Upon the Service Party's receipt of any Additional Assurance Request at the address set forth above, Debtor shall have fourteen (14) days from the receipt of any such Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to endeavor to resolve that Utility Provider's request for additional assurance of payment. During the Resolution Period, Utility Providers may not discontinue, alter, or refuse service to, or discriminate against, Debtor on account of any unpaid pre-petition charges or the commencement of this chapter 11 case;

f.       Debtor may, in its discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without any further order of this Court, and may, in connection with any such agreement, in its discretion, provide a Utility Provider with additional adequate assurance of future payment including, but not limited

DEBTOR'S EMERGENCY OMNIBUS FIRST DAY MOTION  –  16

to, cash deposits, prepayment and/or other forms of security, without further order of this Court, if Debtor believes such additional assurance is reasonable;

g.      If Debtor determines that the Additional Assurance Request is not reasonable and is not able to reach an alternative resolution with the Utility Provider during the Resolution Period, Debtor, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to 11 U.S.C. § 366(c)(3); and

h.      Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering, or refusing service to, or discriminating against, Debtor on account of any unpaid pre-petition charges or the commencement of this chapter 11 case.

Debtor does not anticipate any problems in honoring its utility obligations. Accordingly, Debtor believes that additional adequate assurance payments will ultimately prove unnecessary and, if forced to bring this matter before this Court, would argue the same.

Although Debtor believes that its list of Utility Providers provided above is a complete and accurate list, Debtor reserves the right, without further order of this Court, to supplement or amend the list if any Utility Provider has been inadvertently omitted. If Debtor supplements the list subsequent to the filing of this Utilities Services Motion, Debtor will promptly serve a copy of this motion, and the signed order of this Court, on any Utility Provider that is added to the list by such a supplement. Such an added Utility Provider shall have thirty (30) days from the date of service of this Utilities Services Motion and the signed order of this Court, to make an Additional Assurance Request. If such an Additional Assurance Request is made, Debtor shall abide by the procedures set forth above, as applicable. Pending resolution of any Determination Hearing, Debtor may seek an order prohibiting any such Utility Provider from discontinuing, altering, or refusing service to, or discriminating against, Debtor on account of any unpaid pre-petition charges or the commencement of this chapter 11 case.

## V. NOTICE

Pursuant to Fed.R.Bankr.P. 4001, Debtor respectfully requests that this Court schedule an emergency hearing on the relief sought in this First Day Motion as soon as possible after the Petition Date. Debtor's proposed counsel has attempted to notify the United States Trustee, the Utility Providers, and other interested parties by phone regarding this First Day Motion. Debtor has also served these parties by US Overnight Mail or other requested service, and the largest 20 unsecured creditors, of this First Day Motion and all papers and pleadings in support filed concurrently herewith.

## VI. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court grant the First-Day Motion and enter an order:

1. Authorizing Debtor to pay in the ordinary course of business the prepetition and post-petition wages, salary, and other compensation accrued immediately prior to the filing of this chapter 11 case, pursuant to §§ 507(a)(3), 507(a)(4) and 507(a)(8) of the Bankruptcy Code;

2. Authorizing Debtor to use cash collateral to make required purchases of gas and goods, permits, testing, and maintenance pursuant to 11 U.S.C. §363(a) and FRBP 4001(b) and (d);

3. Authorizing Debtor to pay all payroll taxes and other tax liabilities related thereto;

4. Restraining the Utility Providers from altering, refusing or discontinuing service or, in the alternative, extending time to provide adequate assurance of payment to utility companies pursuant to §§ 105(a) and 366 of the Bankruptcy Code; and

5. for any further relief the Court deems just and proper.

Dated: May 3, 2012                                    MCMILLAN LAW GROUP


By: /s/ Julian McMillan_____
Julian McMillan, Esq.
Attorney for Debtor, Westwood SD, Inc.

LIST OF UTILITY PROVIDERS

1. San Diego Gas & Electric

PO Box 25111

Santa Ana, CA 92799


2. City of San Diego Public Utilities Department

Customer Care Center

PO Box 129020

San Diego, CA 92112-9020